1

2

3                       UNITED STATES DISTRICT COURT

4                      NORTHERN DISTRICT OF CALIFORNIA

5

6    DENIS DEMACEDO,                          Case No.  19-cv-05815-JD

7                  Plaintiff,

8          v.                                 **ORDER RE HABEAS PETITION AND
                                              CERTIFICATE OF APPEALABILITY**
9    CRAIG KOENIG,

10                 Defendant.

11

12         Petitioner Denis Demacedo, a California state prisoner, alleges several claims for habeas

13   relief under 28 U.S.C. § 2254.  Dkt. No. 1.  The Court directed respondent to show cause why the

14   writ should not be granted.  Dkt. No. 4.  Respondent filed an answer to the habeas petition, Dkt.

15   No. 19, and Demacedo filed a traverse.  Dkt. No. 20.  The petition is denied.

16                                    BACKGROUND

17         The California Court of Appeal provided a detailed account of the material facts and trial

18   proceedings.  *See People v. Demacedo*, No. A144919, 2018 WL 1358316, at *1-2 (Cal. Ct. App.

19   Mar. 16, 2018).  The court summarized the facts of the crime:  "While on probation for driving

20   under the influence, Denis Demacedo chose to drive when his blood alcohol content was almost

21   three times the legal limit.  He struck a car and sped away through a residential neighborhood,

22   reaching a speed of almost 70 miles per hour before colliding with a Toyota Tercel.  The collision

23   killed a young man, his teenage brother, and their mother.  The young man's fiancée survived, but

24   was severely injured."  *Id.* at *1.

25         A jury convicted Demacedo of three counts of second degree murder, three counts of gross

26   vehicular manslaughter, driving under the influence and causing bodily injury, driving while

27   having a blood alcohol level of 0.08 percent or more and causing bodily injury, leaving the scene

28

United States District Court
Northern District of California

of a vehicular accident causing property damage, and perjury.  Dkt. No. 1 ¶¶ 1-2.  The state trial court sentenced Demacedo to 47 years and two months to life in prison.  *Id.* ¶ 3.

Demacedo's petition alleges five grounds for habeas relief:  (1) the trial court precluded a defense expert from testifying about the low probability of causing a fatal accident while drinking and driving; (2) the trial court admitted evidence of his prior DUI offense, prior car accident, and past participation in DUI programs; (3) the trial court admitted hearsay in expert testimony; (4) the trial court misapplied sentencing criteria and imposed an unconstitutionally disproportionate sentence; and (5) the cumulative effect of these errors.  Dkt. No. 1 ¶¶ 68-72.

Demacedo raised all of these issues in the state court direct appeal, and the court rejected the first three on the merits.  *See Demacedo*, 2018 WL 1358316, at *1.  It rejected claim four on the ground that Demacedo had forfeited challenges to his sentence by failing to raise them before the trial court at sentencing.  *Id.* at *9-10.  It did not directly address the cumulative error claim. The California Supreme Court denied review.  Dkt. No. 1 ¶ 6.  After filing his petition for federal habeas relief, Demacedo also filed a petition for resentencing, which the state trial court denied. *See* Dkt. No. 17.  Demacedo voluntarily dismissed the appeal of the resentencing petition.  *Id.*

## LEGAL STANDARDS

When a state court decides a claim on the merits, habeas relief can be granted only if the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2); *see also Garcia v. Lizarraga*, No. 19-cv-02083-JD, 2021 WL 242880, at *2 (N.D. Cal., Jan. 25, 2021).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), and the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

2

1    indistinguishable facts." *Williams*, 529 U.S. at 412-13.  A state court decision is an "unreasonable

2    application of" Supreme Court authority if it correctly identifies the governing legal principle from

3    the Supreme Court's decisions but "unreasonably applies that principle to the facts of the

4    prisoner's case." *Id*. at 413.  The federal court on habeas review may not issue the writ "simply

5    because that court concludes in its independent judgment that the relevant state-court decision

6    applied clearly established federal law erroneously or incorrectly." *Id*. at 411.  Rather, the

7    application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

8         A state court decision "based on a factual determination will not be overturned on factual

9    grounds unless objectively unreasonable in light of the evidence presented in the state-court

10   proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir.

11   2000).  The Court presumes the correctness of the state court's factual findings, and the petitioner

12   bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C.

13   § 2254(e)(1).

14        The state court decision to which Section 2254(d) applies is the "last reasoned decision" of

15   the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d

16   1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court

17   that considered the petitioner's claims, the Court looks to the last reasoned opinion from a lower

18   court. *See Nunnemaker*, 501 U.S. at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2

19   (9th Cir. 2000).  In this case, the Court looks to the decision by the California Court of Appeal in

20   resolving the habeas petition. *Demacedo*, 2018 WL 1358316.  Claims one through three were

21   rejected on the merits, and claim four was held to be forfeited. *Id.* at *1.  Consequently, the

22   deferential standard of review under 28 U.S.C. § 2254(d) applies to those claims. *See Cullen v.*

23   *Pinholster*, 563 U.S. 170, 187 (2011).

## DISCUSSION

## I.    EXCLUSION OF DEFENSE EXPERT TESTIMONY

26        Demacedo says that he was denied his rights to due process and to present a complete

27   defense when the trial court excluded the testimony of defense expert Dr. Alan Donelson.  Dkt.

28   No. 1 ¶ 68.

United States District Court
Northern District of California

## A.      Background

The court of appeal found that the trial court did not abuse its discretion in excluding the testimony.  *Demacedo*, 2018 WL 1358316, at *3-4.  It summarized the relevant factual background:

> "Demacedo moved in limine to permit Dr. Alan Donelson to give expert testimony that
> consuming alcohol does not create a high probability of causing a fatal accident.  Donelson
> proposed to opine based on a statistical analysis of general data from the National
> Highway Traffic Safety Administration (NHTSA) that, while an elevated BAC increases
> the risk of a fatal crash, 'given the extremely low average risk of causing a fatal crash, the
> increased likelihood of a fatal crash for drivers who drink excessively still does not equate
> to a high probability, nor is the resultant likelihood accurately characterized as very likely
> or even more likely than not.'  According to Dr. Donelson, '[g]iven that the probability of
> a fatal crash is so low--for example, one fatal crash for every 3.6 million driving trips--
> even were a high BAC to increase that risk one hundred-fold--to 1 alcohol related fatal
> crash for every 360,000 drunk-driving trips--or increase the risk 1,000-fold--to 1 alcohol-
> related fatal crash for every 3,600 drunk-driving trips--the likelihood or odds of an alcohol-
> related crash would remain low and highly improbable.'  Demacedo argued Donelson's
> testimony would help the jury determine 'whether natural and probable consequences of
> [his drunk driving] were dangerous to human life[,] i.e.[,] whether there was a high
> probability that the act would result in death.'  Otherwise, he maintained the jury could
> find the element of implied malice, that the natural and probable consequences of his
> actions were dangerous to human life, was satisfied 'simply by the act of drinking and
> driving alone without more.'
>
> The court excluded the proposed testimony.  It explained: 'what [Donelson's] statistics
> don't know is the driving pattern.  That's what they leave out.  And in this instance the
> driving is of critical importance as to whether those elements are met.  For example, the
> natural and probable consequences of the act are dangerous to human life.  If someone is

4

driving 65 miles an hour in a 25–mile an hour residential area, whatever the actual speed limit is there, there's a lot different than if someone is driving under the influence of alcohol at a low speed. ... So what I find troubling about your proposal is that these statistics don't have any direct relevance to the facts of this case.'  The court observed that the general NHTSA statistics 'don't mean anything in the abstract.  And they're misleading in the abstract' because 'the evidence has to be evaluated in each individual case.  And this case involves certain facts that are different than, you know, other drunk driving cases that might result in some kind of an accident.'  The court found the proposed testimony was therefore neither relevant nor helpful to the trier of fact.  '[I]t does not relate to the specific details of this accident either by way of driving pattern, speed, level of blood alcohol.  And anything that occurred very unique to this case, which in this instance wherein a prior accident, albeit a minor one, it's related to the whole picture of what happened here.'"  *Id.* at *3.

As the court of appeal determined, under Section 801(a) of the California Evidence Code, "[e]xpert opinion testimony is admissible only if it is related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact."'  *Id.* at *4 (quoting *People v. McDowell*, 279 P.3d 547, 572 (Cal. 2012)) (internal quotations omitted).

The court of appeal found that the trial court had not abused its discretion in excluding Dr. Donelson's testimony under this standard.  *Id.*  It found that the trial court "reasonably concluded that Donelson's statistical estimation of the probability drunk driving will cause a fatal crash *in general*, with no reference to the specific facts of this case, was of minimal relevance and likely to mislead the jury as to what was required for implied malice."  *Id.*  (emphasis in original).

### B.      Discussion

A person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2554(a).  A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally

1    fair trial guaranteed by due process.  *Pulley v. Harris*, 465 U.S. 3, 41 (1984); *Jammal v. Van de*

2    *Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir.

3    1985); *see also Brown v. Paramo*, No. 17-cv-03948-JD, 2018 WL 3632042, at *5 (N.D. Cal. July

4    31, 2018).

5          The constitutional right to present a complete defense includes the right to present

6    evidence and the testimony of witnesses.  *See Washington v. Texas*, 388 U.S. 14, 19 (1967); *see*

7    *also Miller v. Martinez*, No. 16-cv-06806-JD, 2018 WL 3068263, at *5 (N.D. Cal. Jan. 21, 2018).

8    But the right is only implicated when the evidence the defendant seeks to admit is "relevant and

9    material, and ... vital to the defense."  *Washington*, 388 U.S. at 16.

10         Additionally, a violation of the right to present a defense does not occur any time such

11   evidence is excluded, but rather only when its exclusion is "arbitrary or disproportionate to the

12   purposes [the exclusionary rule applied is] designed to serve."  *Holmes v. South Carolina*, 547 U.S.

13   319, 324 (2006) (internal quotations and citation omitted); *Michigan v. Lucas*, 500 U.S. 145, 151

14   (1991).  This is true even if the rule under which the evidence is excluded is "respected[,] ...

15   frequently applied," and otherwise constitutional.  *Chambers v. Mississippi*, 410 U.S. 284, 302

16   (1973).  If the mechanical application of such a rule would "defeat the ends of justice," then the

17   rule must yield to those ends.  *Id*.  Still, "[o]nly rarely" has the Supreme Court held that the right

18   to present a complete defense was violated by the exclusion of defense evidence under a state rule

19   of evidence.  *See, e.g.*, *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (citing *Holmes*, 547 U.S. at

20   331 (rule did not rationally serve any discernable purpose); *Rock v. Arkansas*, 483 U.S. 44, 61

21   (1987) (rule arbitrary); *Chambers*, 410 U.S. at 302-03 (state did not even attempt to explain the

22   reason for its rule); *Washington*, 388 U.S. at 22 (rule could not be rationally defended)).

23         Demacedo says that excluding Dr. Donelson's testimony deprived him of due process and

24   his right to present a complete defense.  Dkt. No. 1 at m-6-10.  He contends that the court of

25   appeal unreasonably applied federal law because it failed to consider whether the exclusion of the

26   testimony violated due process under the Ninth Circuit's five-factor balancing test.  Dkt. No. 1 at

27   m-6-7 (citing *Alcala v. Woodford*, 334 F.3d 862, 877 (9th Cir. 2003)).  That balancing test,

28   however, is a matter of circuit law, and consequently is not "clearly established Federal law" for

United States District Court
Northern District of California

1   purposes of habeas corpus review under 28 U.S.C. § 2254(d)(1).  *Moses v. Payne*, 555 F.3d 742,

2   759-60 (9th Cir. 2009).  Because the Supreme Court has not squarely addressed the issue of

3   whether the application of a state evidentiary rule that led to the preclusion of expert evidence

4   could violate a defendant's right to present a defense, the state court's failure to apply the Ninth

5   Circuit's balancing test is not contrary to or an unreasonable application of clearly established

6   Supreme Court precedent, and Demacedo is not entitled to federal habeas relief on this claim.  *Id.*

7   at 758-60; *see also Brown*, 2018 WL 3632042, at *9.

8           Even if a constitutional violation had occurred, which is not the case, Demacedo has made

9   no showing that he was prejudiced.  A violation of the right to present a defense merits habeas

10  relief only if the error was likely to have had a "substantial and injurious effect" on the verdict.

11  *See Lunbery v. Hornbeak*, 605 F.3d 754, 762 (9th Cir. 2010) (citing *Brecht v. Abrahamson*, 507

12  U.S. 619, 637-38 (1993)).

13          Demacedo says that, "without Donelson's testimony, the jury was allowed to conclude that

14  simply driving while intoxicated or at a high rate of speed is 'dangerous to human life' and

15  therefore evidence of implied malice.  Dkt. No. 1 at m-11.  But as the court of appeal explained,

16  implied malice "does *not* require a defendant's awareness that his or her conduct had a *high*

17  *probability* of resulting in death."  *Demacedo*, 2018 WL 1358316, at *4 (quoting *People v.*

18  *Johnson*, 197 Cal. Rptr. 3d 353, 386 (Cal. Ct. App. 2016)).  Rather, "conscious disregard for

19  human life, the mental state required for implied malice, requires a defendant's awareness of

20  engaging in conduct that endangers the life of another--no more, and no less."  *Id.* (quoting

21  *Johnson*, 197 Cal. Rptr. 3d at 386).  Both state courts reasonably concluded that Dr. Donelson's

22  testimony about general drunk driving statistics had no tendency to prove whether Demacedo was

23  aware that his extreme drunkenness and reckless driving created a danger to human life.  *Id.*

24          Demacedo concedes that the jury was presented with other evidence that he did not act

25  with implied malice:  witnesses testified to his distress and remorse following the collision, and an

26  expert witness testified that he braked and swerved to avoid the accident.  Dkt. No. 1 at m-12.

27  Given the weight of the evidence against him, and the minimal relevancy of Dr. Donelson's

28

United States District Court
Northern District of California

7

testimony, Demacedo has not shown any "substantial and injurious effect or influence" on the jury's verdict. *Brecht*, 507 U.S. at 623. Habeas relief is denied on this claim.

## II.    ADMISSION OF PRIOR ACTS EVIDENCE

Demacedo's second claim for habeas relief is that the trial court erroneously admitted cumulative, prejudicial, and irrelevant evidence regarding his prior car accident, prior DUI conviction, and past participation in a DUI First Offender Program (FOP). Dkt. No. 1 ¶ 69.

### A.    Background

The court of appeal found that the trial court acted within its discretion in admitting the evidence. *Demacedo*, 2018 WL 1358316, at *5-6. It summarized the relevant factual background:

"Demacedo was convicted of driving under the influence in 2010 and was on probation for this offense at the time of the fatal collision in this case. His blood alcohol content on that occasion was .26. As a result he was required to complete a first offender program (FOP), but after a few classes was expelled for poor attendance and nonpayment of fees. Before his expulsion, Demacedo received individual counseling and attended at least one lecture about the dangers of drinking and driving.

Just 18 days before the fatal collision in this case Demacedo was pulling out of an apartment complex driveway and struck a car driven by Robyn M., causing significant damage. Demacedo stopped and admitted fault.

The prosecutor moved in limine to admit evidence about both incidents as proof of implied malice, knowledge, intent and motive. Demacedo moved to exclude the evidence under section 352. The court found Demacedo's prior DUI, including his participation in the FOP, was highly relevant and more probative than prejudicial and that the recent collision with Robyn M. was relevant to Demacedo's awareness of the risks and consequences of his actions. Testimony about both incidents was admitted at trial.

The jury was instructed with CALCRIM No. 375 that it could use evidence of the prior uncharged offenses or acts to determine whether Demacedo had a motive to commit the offense in this case, and whether he knew '1.  That the act of driving in the manner that he drove was dangerous to human life and created a high risk of death or great bodily injury; and 2.  He had been involved in an accident that caused property damage and that he needed to stop at the scene and provide his name and address.'  The jury was also instructed not to conclude from this other acts evidence that Demacedo 'has a bad character or is disposed to commit crime.'"

*Id.* at *4-5.

The court of appeal found that the trial court acted within its discretion when it admitted the evidence under Cal. Evid. Code § 1101(b), which permits "admission of evidence that a person committed a crime, civil wrong, or other act" that is relevant to prove a fact such as motive, intent, or knowledge, "other than his or her disposition to commit such an act."  *Demacedo*, 2018 WL 1358316, at *5.  The court of appeal explained that the admissibility of such evidence "depends on the materiality of the fact sought to be proved, the tendency of the prior crime to prove the material fact, and the existence or absence of some other rule requiring exclusion."  *Id.* (quoting *People v. Whisenhunt*, 186 P.3d 496, 518 (Cal. 2008)).  "The probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury."  *Id.* (quoting *People v. Kipp*, 956 P.2d 1169, 1182 (Cal. 1998)).

The court of appeal agreed with the trial court that the evidence of Demacedo's prior DUI was "highly probative" because, under California law, "a person whose reckless driving kills another can be found guilty of second degree murder if the evidence supports a finding of implied malice."  *Id.* (citing *People v. Watson*, 637 P.2d 279, 283 (Cal. 1981)).  "A finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard."  *Id.* (quoting *Watson*, 637 P.2d at 283) (emphasis in original).  The court noted that "[s]ince *Watson*, numerous courts have upheld the use of prior driving conduct to prove implied malice in vehicular second degree murder cases."  *Id.* (citations omitted).

The court of appeal found that "evidence of Demacedo's prior DUI conviction and FOP experience was admissible to prove he was aware of the life-threatening risks caused by his drunk driving. The collision with Robyn M. weeks before the fatal crash bore on his awareness of the dangers of reckless driving. But it also showed he knew he was supposed to stop and exchange information if involved in an accident, and this evidence supported the prosecution's 'consciousness of guilt' theory that he fled after rear-ending M.R. because he knew he was drunk." *Id.* at *6.

The court also found that the evidence was not unduly prejudicial because "evidence of Demacedo's prior DUI, attendance at the FOP and his minor collision were highly unlikely to inflame the jury in light of the evidence that Demacedo's drunk and high-speed reckless driving killed three innocent victims, severely injured a fourth, deprived a young woman of her fiancé and left a close-knit family shattered. Moreover, the trial court instructed the jury not to consider the other acts evidence as evidence of a bad character or criminal predisposition and we presume the jury followed those instructions." *Id.* (citations omitted).

**B.    Discussion**

The admission of evidence is an issue of state law. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009); *see also Jones v. Spearman*, No. 16-cv-03627-JD, 2018 WL 424402, at *4 (N.D. Cal. Jan. 16, 2018). "Simple errors of state law do not warrant federal habeas relief." *Holley*, 568 F.3d at 1101. Accordingly, the decision of a state trial court to admit evidence "is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

When a petitioner alleges that a state trial court's decision to admit evidence was improper, the only question before a federal habeas court is whether an erroneous admission "rendered the trial fundamentally unfair in violation of due process." *Holley*, 568 F.3d at 1101 (quoting *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995)). However, "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal

1    habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the

2    Supreme Court." *Id.*

3         Where the Supreme Court has not made a clear ruling upon an issue, circuit courts may not

4    use their own precedent to find a state court ruling unreasonable. *Id.* (citing *Carey v. Musladin*,

5    549 U.S. 70, 77 (2006)); *see also Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) ("[C]ircuit

6    precedent does not constitute 'clearly established Federal law, as determined by the Supreme

7    Court.'") (quoting § 2254(d)(1)).  Absent clearly established federal law, a habeas court cannot

8    conclude that a state court's ruling was contrary to or an unreasonable application of clearly

9    established federal law, and is therefore "without power to issue the writ."  *Holley*, 568 F.3d at

10   1101.

11        The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly

12   prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."

13   *Id.*; *see also Walden v. Shinn*, 990 F.3d 1183, 1204 (9th Cir. 2021).  The Court has also left open

14   the question of whether admission of propensity evidence violates due process.  *Estelle*, 502 U.S.

15   at 75 n.5.  Thus, whether admission of prior bad acts to prove propensity violates due process has

16   not been clearly established by the Supreme Court.  *See, e.g.*, *Mejia v. Garcia*, 534 F.3d 1036,

17   1046 (9th Cir. 2008).

18        Because there is no clearly established Supreme Court authority pertaining to the

19   erroneous admission of irrelevant, prejudicial, or propensity evidence, the admission of

20   Demacedo's prior car accident, DUI conviction, and FOP participation cannot be considered

21   contrary to or an unreasonable application of clearly established federal law.  *Holley*, 568 F.3d at

22   1101; *see also Jones*, 2018 WL 424402, at *4-5.

23        Federal habeas relief is available only when "the admission of evidence rendered the trial

24   so fundamentally unfair as to violate due process."  *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th

25   Cir. 1998).  Due process is violated in this respect "[o]nly if there are *no* permissible inferences

26   the jury may draw from the evidence."  *Jammal*, 926 F.2d at 920 (emphasis in original).

27        That is not the case here.  As both the state courts concluded, Demacedo's prior DUI

28   conviction and FOP participation were relevant to show that he was repeatedly advised about the

United States District Court
Northern District of California

11

dangers of drinking and driving.  *Demacedo*, 2018 WL 1358316, at *6.  And his prior car accident was likewise relevant to show that Demacedo was aware of the dangers of reckless driving and knew he was supposed to stop and identify himself after hitting a car.  *Id.*  It was entirely permissible for the jury to infer from this evidence that Demacedo had actual awareness that his drunk and reckless driving was dangerous to human life; that he knew he was supposed to stop after he struck M-R's car; and that he did not stop after he struck M-R's car because he knew he was severely intoxicated.  *Id.*

Demacedo has not shown a prejudicial impact from the admission of this evidence.  Given the amount of evidence against Demacedo regarding the charged offense, and the relatively mild nature of the prior DUI incident and car accident in comparison, this Court cannot say that the challenged evidence had a "substantial and injurious effect or influence" on the jury's verdict.  *Brecht*, 507 U.S. at 623.  Habeas relief is denied on this claim.

### III.    CONFRONTATION CLAUSE

Demacedo's third claim for habeas relief is that he was denied the right to confront the witnesses against him when the trial court erroneously admitted hearsay expert testimony, and the court of appeal unreasonably applied federal law to determine that the trial court's error was harmless.  Dkt. No. 1 ¶ 70.

#### A.    Background

This claim arises from the prosecution's expert testimony.  The prosecution's expert, Rudy Degger, testified that Demacedo was driving 67 miles per hour at the time of the collision.  *Demacedo*, 2018 WL 1358316, at *6.  Degger testified that his conclusion was corroborated by the analysis of another expert, Craig Fries, who estimated that Demacedo was driving 72 miles an hour.  *Id.*  Degger also testified that, according to Fries' analysis, Demacedo was accelerating at the time of impact.  *Id.*  The prosecution called Fries as rebuttal witness to testify about the analysis of the defense's crash reconstruction expert.  *Id.* at *7.

The court of appeal concluded, and the prosecution conceded, that Degger's testimony about Fries' out-of-court statements was hearsay and erroneously admitted under *People v. Sanchez*, 374 P.3d 320, 333 (Cal. 2016) ("When any expert relates to the jury case-specific out-of-

court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay."). *Demacedo*, 2018 WL 1358316, at \*7. The court of appeal held that the error did not violate the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36, 51 (2004), because Demacedo had the opportunity to cross-examine Fries when he was called as a rebuttal witness. *Demacedo*, 2018 WL 1358316, at \*7.

The court of appeal also reasoned that, even if the admission of Degger's testimony violated the Confrontation Clause, the error was harmless. *Id.* (citing *Chapman v. California*, 386 U.S. 18 (1967)). "[T]he evidence showed beyond any possible doubt that Demacedo drove with horrifying recklessness" and given that Fries agreed on rebuttal with Degger's 67 miles-per-hour estimate, "there is simply no possibility Degger's improper testimony about Fries' initial 72-mile-per-hour figure could have affected the jury's verdict." *Id.*

### B.    Discussion

The Confrontation Clause of the Sixth Amendment provides that the accused in a criminal case has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than substantive guarantee. *Crawford*, 541 U.S. at 61. "It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.*; *see also Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (a primary interest secured by the Confrontation Clause is the right of cross-examination). The Confrontation Clause applies to all "testimonial" statements. *Crawford*, 541 U.S. at 50-51. "Testimony … is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (internal quotations omitted). The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial, regardless of the admissibility of the statements under state laws of evidence. *Id.* at 50-51.

Confrontation Clause claims are subject to harmless error analysis. *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004) (post-*Crawford* case); *see also United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005). For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an

1    actual and prejudicial effect upon the jury.  *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir.

2    2002) (citing *Brecht*, 507 U.S. at 637); *Webb v. Lewis*, 44 F.3d 1387, 1393 (9th Cir. 1994) (same).

3         Demacedo argues that the court of appeal's harmless error analysis was an unreasonable

4    application of *Chapman*.  *See* Dkt. No. 1 at m-21-22; Dkt. No. 20-1 at 10.  The problem for

5    Demacedo is that the court of appeal expressly held that there was no constitutional error under

6    *Sanchez*, and it only analyzed the claim under *Chapman* as an alternative ground for denying

7    Demacedo's appeal.  *Demacedo*, 2018 WL 1358316, at *7 ("[T]he *Sanchez* error in this case does

8    not appear to raise the constitutional issue because Fries testified in rebuttal for the prosecution,

9    and Demacedo thus had the opportunity to cross-examine him.").  Demacedo makes no showing

10   that the state court erred in its determination that there was no violation of federal law, and cites

11   no Supreme Court cases applying *Crawford* in the same way as *Sanchez*.  *Cf. Williams v. Illinois*,

12   567 U.S. 50, 86, 103, 119-20 (2012) (fracturing over whether hearsay used as the basis of an

13   expert's opinion can violate the Confrontation Clause).  Consequently, the state court did not

14   unreasonably apply federal law in determining that there was no Confrontation Clause violation

15   under *Sanchez*.

16        In any event, the state court's *Chapman* analysis was entirely reasonable.  "When a

17   *Chapman* decision is reviewed under AEDPA, a federal court may not award habeas relief under

18   § 2254 unless the harmlessness determination itself was unreasonable.... [A] state-court decision is

19   not unreasonable if fairminded jurists could disagree on its correctness.... [The petitioner]

20   therefore must show that the state court's decision to reject his claim was so lacking in justification

21   that there was an error well understood and comprehended in existing law beyond any possibility

22   for fairminded disagreement."  *Davis v. Ayala*, 576 U.S. 257, 269-70 (2015) (internal quotations

23   and citations omitted).  If the federal court determines that the state court's harmless-error analysis

24   was objectively unreasonable, it also must find that the error was prejudicial under *Brecht*, 507

25   U.S. 619, before it can grant relief.  *See Fry v. Pliler*, 551 U.S. 112, 119-20 (§ 2254(d)(1) did not

26   displace *Brecht*).

27        Demacedo says that the court of appeal did not properly weigh the effect of the

28   erroneously admitted hearsay evidence on the jury's verdict.  Dkt. No. 1 at m-22.  He argues that

14

1   the testimony that he was accelerating at the time of the impact could have suggested to the jury

2   that he acted with conscious disregard for life or that he was too drunk to avoid the other car, and

3   "[t]he difference of a few miles per hour could very well have been the difference between a

4   verdict for manslaughter and one for murder." *Id*.  He further contends that the evidence

5   corroborated the prosecution's expert testimony and consequently "provided the prosecution with

6   an unfair advantage and rendered the trial fundamentally unfair."  Dkt. No. 20-1 at 10.

7        These are little more than mere disagreements with the state court of appeal's conclusions.

8   The court identified the correct legal standards, and applied them in a clear and logical manner.

9   *See Demacedo*, 1358316, at *7.  Demacedo has not shown that there was anything objectively

10  unreasonable about the analysis.  This also forecloses any possibility of finding prejudice under

11  the *Brecht* "substantial and injurious" standard.  Habeas relief is denied on this claim.  *See Fry*,

12  551 U.S. at 121-22; *Brecht*, 507 U.S. at 623.

### IV.    SENTENCING

14       Demacedo next claims that the trial court imposed an unconstitutionally excessive and

15  disproportionate sentence.  Dkt. No. 1 ¶ 71.  He also asserts that the court of appeal erred when it

16  held that he forfeited these challenges to his sentence because he failed to raise them before the

17  trial court.  *Id.* at m-23-24.

### A.    Background

19       The trial court sentenced Demacedo "to serve three consecutive 15-years-to-life terms for

20  the murders, a consecutive eight-month term for DUI with bodily injury with a 20-month

21  enhancement for inflicting great bodily injury resulting in a coma, and two concurrent middle

22  terms for perjury."  *Demacedo*, 2018 WL 1358316, at *8.  Demacedo did not object to the

23  sentence or the court's reasons for imposing the sentence at the sentencing hearing.  *Id.* at *9.

24       In his state court appeal, Demacedo argued that the trial court abused its discretion and

25  improperly applied sentencing criteria when it imposed consecutive terms for the three murder

26  charges.  *Id.*  He also argued that the aggregate term was unconstitutionally excessive and

27  disproportionate.  *Id.*  The court of appeal held that his contentions were forfeited under *People v.*

28  *Scott*, 885 P.2d 1040, 1053 (Cal. 1994), because Demacedo failed to object to his sentence before

United States District Court
Northern District of California

1   the trial court.  *Id.* at *9-10.

2         The court of appeal explained that in *Scott*, the California Supreme Court held that

3   "counsel is charged with understanding, advocating, and clarifying permissible sentencing choices

4   at the hearing.  Routine defects in the court's statement of reasons are easily prevented and

5   corrected if called to the court's attention.  As in other waiver cases, we hope to reduce the number

6   of errors committed in the first instance and preserve the judicial resources otherwise used to

7   correct them."  *Id.* at *9 (quoting *Scott*, 885 P.2d at 1053).  Consequently, "claims deemed waived

8   on appeal involve sentences which, though otherwise permitted by law, were imposed in a

9   procedurally or factually flawed manner," and "[a] claim a sentence is cruel and unusual is

10  forfeited on appeal if it is not raised in the trial court because the issue often requires a fact-bound

11  inquiry."  *Id.* (quoting *Scott*, 885 P.2d at 1054 and *People v. Speight*, 174 Cal. Rptr. 3d 454, 469

12  (Cal. Ct. App. 2014)).

13        The court found that "[t]he fact-bound choices discussed in *Scott* are precisely the kind

14  Demacedo is attempting to challenge for the first time in this appeal."  *Id.* at *10.  It rejected

15  Demacedo's argument that he was not given a meaningful opportunity to object at the sentencing

16  hearing because "the trial court clearly explained its sentencing decision and the reasons for its

17  discretionary choices.  It then asked both counsel whether it had 'left anything out.'  While

18  defense counsel raised no objection, nothing in the hearing transcript suggests he could not have

19  done so when the court invited his comments."  *Id.*

20        **B.      Discussion**

21        The Court may not review questions of federal law decided by a state court if the decision

22  also rests on a state law ground that is independent of the federal question and adequate to support

23  the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Bath v. Foss*, No.

24  3:18-cv-00508-JD, 2019 WL 3997441, at *3 (N.D. Cal. Aug. 23, 2019); *Mullan v. Arnold*, Nos.

25  15-cv-01003-JD, 15-cv-02032-JD, 2017 WL 1407717, at *5 (N.D. Cal. Apr. 20, 2017).

26  Procedural default is a specific instance of the more general "adequate and independent state

27  grounds" rule.  *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994).  Our circuit has recognized

28  and applied the California contemporaneous objection rule in affirming denial of a federal habeas

United States District Court
Northern District of California

16

1   petition on grounds of procedural default where there was a complete failure to object at trial.  *See*

2   *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083,

3   1092-93 (9th Cir. 2004); *Fairbank v. Ayers*, 650 F.3d 1243, 1256-57 (9th Cir. 2011); *see also*

4   *Franklin v. Lockyer*, 80 Fed. App'x 545, 546 (9th Cir. 2003) (contemporaneous objection rule

5   barred federal habeas review of an Eighth Amendment claim because petitioner failed to object at

6   sentencing).

7           Demacedo has not met the stringent requirements that might excuse his default and allow

8   habeas review by the Court on this claim.  In cases where "a state prisoner has defaulted his

9   federal claims in state court pursuant to an independent and adequate state procedural rule, federal

10  habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and

11  actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

12  consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at

13  750.  A petitioner must establish actual innocence in order to show that a fundamental miscarriage

14  of justice would result from application of procedural default.  *See Gandarela v. Johnson*, 286

15  F.3d 1080, 1085 (9th Cir. 2002); *Wildman v. Johnson*, 261 F.3d 832, 842-43 (9th Cir. 2001).

16          Demacedo makes no arguments regarding cause, and his arguments that he lacked

17  malicious intent and took responsibility for his actions do not establish that his sentence will

18  impose a fundamental miscarriage of justice.  Dkt. No. 1 at m-25-27.  Consequently, he cannot

19  challenge the procedural default, and habeas relief is denied on this claim.

20  **V.    CUMULATIVE ERROR**

21          Demacedo's final claim is that the cumulative effect of the alleged errors violated his right

22  to a fair trial.  *Id.* ¶ 72.  In some cases, although no single trial error is sufficiently prejudicial to

23  warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much

24  that his conviction must be overturned.  *Alcala*, 334 F.3d at 893-95 (reversing conviction where

25  multiple constitutional errors hindered the defendant's efforts to challenge every important

26  element of proof offered by the prosecution).

27          Demacedo argues that the court of appeal unreasonably refused to address his cumulative

28  error claim.  Dkt. No. 1 at m-30-31.  But where there is no single constitutional error existing, like

United States District Court
Northern District of California

17

1    in this case, nothing can accumulate to the level of a constitutional violation. *See Hayes v. Ayers*,

2    632 F.3d 500, 524 (9th Cir. 2011).  The state court found one nonprejudicial state law error in the

3    admission of hearsay expert testimony, and implicitly and reasonably held that there were no

4    constitutional errors to cumulate. *Demacedo*, 2018 WL 1358316, at *6-8.  Habeas relief is denied

5    on this claim.

**CONCLUSION**

7        The petition is denied.  The federal rules governing habeas cases brought by state prisoners

8    require a district court that issues an order denying a habeas petition to either grant or deny therein

9    a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).  The certificate of

10   appealability is also denied.

11       The Court may grant a certificate of appealability "only if the applicant has made a

12   substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

13   certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3).  "Where a district

14   court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c)

15   is straightforward:  [t]he petitioner must demonstrate that reasonable jurists would find the district

16   court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

17   473, 484 (2000).  Demacedo has not shown a certificate is warranted, and so it is denied.

18       **IT IS SO ORDERED.**

19   Dated:  September 15, 2022

_____
JAMES DONATO
United States District Judge